# 12-4093

*To Be Argued By*:
DAVID J. KENNEDY

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 12-4093

➤ ◀ ◆ ▶ ◀

TODD KREISLER,

*Plaintiff-Appellee,*

—v.—

SECOND AVENUE DINER CORP., a New York corporation doing business as Plaza Diner, J.J.N.K. Corp., a New York corporation,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA
## AS *AMICUS CURIAE* IN SUPPORT OF AFFIRMANCE

THOMAS E. PEREZ,
*Assistant Attorney General*

MARK L. GROSS,
LISA J. STARK,
*Attorneys, Appellate Section*
*Civil Rights Division*
*Department of Justice*

PREET BHARARA,
*United States Attorney for the*
*Southern District of New York,*
*Attorney for the United States*
*of America as Amicus Curiae*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2733

DAVID J. KENNEDY,
BENJAMIN H. TORRANCE,
*Assistant United States Attorneys,*
*Of Counsel.*

# TABLE OF CONTENTS

PAGE

Introduction and Interest of the United States . . . .  1

Questions Presented  . . . . . . . . . . . . . . . . . . . . . . . . .  3

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . .  4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

POINT I—THE DISTRICT COURT CORRECTLY
CONCLUDED THAT KREISLER HAD STANDING TO
CHALLENGE BARRIERS PERTAINING TO HIS
DISABILITY AT THE DINER . . . . . . . . . . . . . . . . . . .  9

    A.   The Statutory Framework . . . . . . . . . . . . . .  9

    B.   The District Court Correctly Held a Plaintiff
Need Not Have Personally Experienced
Barriers to Have Suffered Injury in Fact and
Have Standing to Seek Injunctive Relief
Under Title III of the ADA . . . . . . . . . . . . .  12

    C.   A Plaintiff Need Not Engage in "Futile
Gestures" to Have Standing to Seek
Injunctive Relief . . . . . . . . . . . . . . . . . . . . . .  18

    D.   The District Court Correctly Held That a
Plaintiff with Standing Can Challenge Any
Inaccessible Barrier Within a Facility That
Pertains to His or Her Disability . . . . . . . .  19

POINT II—THE DISTRICT COURT CORRECTLY HELD
THAT THE DINER BORE THE BURDEN OF
DEMONSTRATING THAT COMPLIANCE WAS NOT
READILY ACHIEVABLE . . . . . . . . . . . . . . . . . . . . .  22

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

ii

## TABLE OF AUTHORITIES

*Cases*:

*Borkowski v. Valley Cent. School Dist.*,
    63 F.3d 131 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . 23

*Camarillo v. Carrols Corp.*,
    518 F.3d 153 (2d Cir. 2008) . . . . . . . . . . . . . 14, 17

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    631 F.3d 939 (9th Cir. 2011) . . . . . . . . . . . . *passim*

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . 13

*Clapper v. Amnesty International USA*,
    133 S. Ct. 1138 (2013). . . . . . . . . . . . . . . . . . . 12, 13

*Colorado Cross Disability Coalition v.
    Hermanson Family Ltd.*,
    264 F.3d 999 (10th Cir. 2001) . . . . . . . . . . . . . . . 22

*Desiderio v. National Ass'n of Sec. Dealers, Inc.*,
    191 F.3d 198 (2d Cir. 1999) . . . . . . . . . . . . . . . . . 12

*Disabled Americans for Equal Access, Inc. v.
    Ferries del Caribe, Inc.*,
    405 F.3d 60 (1st Cir. 2005). . . . . . . . . . . . . . . 15, 18

*Doran v. 7-Eleven, Inc.*,
    524 F.3d 1034 (9th Cir. 2008) . . . . . . . .   15, 18, 20

*Frame v. City of Arlington*,
    657 F.3d 215 (5th Cir. 2011) . . . . . . . . . . . . . 15, 18

iii

PAGE

*Fulton v. Goord,*
    591 F.3d 37 (2d Cir. 2009) . . . . . . . . . . . . . . . . . 14

*Hargrave v. Vermont,*
    340 F.3d 27 (2d Cir. 2003) . . . . . . . . . . . . . . . . . 12

*Innovative Health Sys., Inc. v. City of*
    *White Plains,*
    117 F.3d 37 (2d Cir. 1997) . . . . . . . . . . . . . . . . . 25

*International Brotherhood of Teamsters v.*
    *United States,*
    431 U.S. 324 (1977). . . . . . . . . . . . . . . . . . . . . . 11

*Kreisler v. Second Ave. Diner Corp.,*
    10 Civ. 7592 (RJS), 2011 WL 4686500
    (S.D.N.Y. Oct. 5, 2011) . . . . . . . . . . . . . . 6, 14, 17

*Kreisler v. Second Ave. Diner Corp.,*
    10 Civ. 7592 (RJS), 2012 WL 3961304
    (S.D.N.Y. Sept. 11, 2012) . . . . . . . . . . . . . . . . . . 7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . 12, 13

*McCormick ex rel. McCormick v. School Dist. of*
    *Mamaroneck,*
    370 F.3d 275 (2d Cir. 2004) . . . . . . . . . . . . . . . . 13

*Molski v. Foley Estates Vineyard & Winery LLC,*
    531 F.3d 1043 (9th Cir. 2008) . . . . . . . . . . . . . . 23

*NRDC v. FDA,*
    710 F.3d 71 (2d Cir. 2013) . . . . . . . . . . . . . . . . . 13

*Pickern v. Holiday Quality Foods Inc.,*
    293 F.3d 1133 (9th Cir. 2002) . . . . . 11, 14, 15, 18

iv

PAGE

*Public Citizen v. United States Dep't of Justice,*
    491 U.S. 440 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Roberts v. Royal Atlantic Corp.,*
    542 F.3d 363 (2d Cir. 2008) . . . . . . . . . . . . . . 22, 23

*Scherr v. Marriott Int'l, Inc.,*
    703 F.3d 1069 (7th Cir. 2013) . . . . . . . . . . . . . . . 17

*Steger v. Franco, Inc.,*
    228 F.3d 889 (8th Cir. 2000) . . . . . . . . . . . . *passim*

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Williams v. Lambert,*
    46 F.3d 1275 (1995) . . . . . . . . . . . . . . . . . . . . . . . 12

*Zervos v. Verizon N.Y., Inc.,*
    252 F.3d 163 (2d Cir. 2001) . . . . . . . . . . . . . . . . . 25

*Statutes*:

28 U.S.C. § 517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 12101(a)(7) . . . . . . . . . . . . . . . . . . . . . 9, 16

42 U.S.C. § 12101(b)(4) . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 12181 . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

42 U.S.C. § 12182(a) . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

42 U.S.C. § 12188(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 12188(a)(1) . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. § 12188(a)(2) . . . . . . . . . . . . . . . . . . . . . . 20

v

                                                                    PAGE

42 U.S.C. § 12188(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 12188(b)(2)(B) . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 2000a-3(a) . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. §§ 12131-12165 . . . . . . . . . . . . . . . . . . . . . 24

*Regulations*:

28 C.F.R. § 35.130(b)(7) . . . . . . . . . . . . . . . . . . . . . . . 24

28 C.F.R. § 36.305(a) . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 C.F.R. § 36.401 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 C.F.R. § 36.402 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 C.F.R. Part 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

36 C.F.R. Part 1191 . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 12-4093

---

TODD KREISLER,

*Plaintiff-Appellee,*

—v.—

SECOND AVENUE DINER CORP., A NEW YORK
CORPORATION DOING BUSINESS AS PLAZA DINER,
J.J.N.K. CORP., A NEW YORK CORPORATION,

*Defendants-Appellants.*

---

## BRIEF FOR THE UNITED STATES AS *AMICUS CURIAE* IN SUPPORT OF AFFIRMANCE

---

### Introduction and Interest of the United States

Pursuant to 28 U.S.C. § 517 and Rule 29(a) of the Federal Rules of Appellate Procedure, the United States of America respectfully submits this *amicus curiae* brief in support of affirmance of the district court's orders for declaratory and injunctive relief for plaintiff-appellee Todd Kreisler against defendants-appellants Second Avenue Diner Corp. and J.J.N.K. Corp., doing business as the Plaza Diner (collectively, the "Diner").

2

This case primarily concerns the standing of an individual with a disability to bring a private action under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, to challenge the inaccessibility of a place of public accommodation. Private plaintiffs play a critical role in enforcing the ADA, particularly against places of public accommodation. *See* 42 U.S.C. § 12188(a). The Attorney General has statutory authority to enforce Title III of the ADA, *see* 42 U.S.C. § 12188(b), but cannot investigate every place of public accommodation to determine if it is in compliance with the law. Effective enforcement of Title III depends upon a combination of suits by the United States and litigation by individuals with disabilities. The United States therefore has an interest in ensuring that the standing of private plaintiffs to sue under Title III is not unduly restricted. To vindicate that interest, the United States has previously filed amicus briefs in support of a private plaintiff's standing in cases presenting the same question raised here; those briefs comported with the United States' argument in this case that a plaintiff need not have personally experienced a barrier to have standing to challenge those barriers that pertain to his or her disability. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 950-53 (9th Cir. 2011) (en banc); *Steger v. Franco, Inc.*, 228 F.3d 889, 893-94 (8th Cir. 2000). Accordingly, the United States submits this brief as *amicus curiae* to explain why the Diner's arguments relating to Kreisler's standing to bring this action are unsupported by law. (*See* Br. for Defendants-Appellants ("Diner Br.") 5-11).

3

Moreover, certain of the Diner's arguments would adversely affect the ability of both the United States and private plaintiffs to enforce the ADA. Specifically, the Diner advances the incorrect legal arguments that a plaintiff under the ADA (which would include the United States) has the burden of showing that a particular architectural remedy is readily achievable, and must demonstrate that the relevant municipality would issue the necessary building permits to implement the remedy. (Diner Br. 12-15). This Court has squarely rejected those arguments, in decisions that the Diner fails to mention. The United States has a strong interest in avoiding the imposition of legally incorrect and unfounded burdens when it brings cases under the ADA.[1]

For all those reasons, the United States respectfully urges this Court to affirm the orders of the district court.

**Questions Presented**

1. Whether, under Title III of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq.*, a plaintiff with a disability who personally encounters a barrier at the entrance to a restaurant that deters him from visiting the facility has standing and is entitled to

---

[1]    The United States takes no position regarding the remaining issues raised by the Diner: Point VI of the Diner's brief addresses the required signage under the ADA, and Point VII of the Diner's brief concerns attorney's fees.

4

seek injunctive relief as to all the restaurant's barriers that pertain to his disability.

2. Whether, under Title III of the Americans With Disabilities Act, once the plaintiff has offered a plausible proposal for the removal of architectural barriers, the defendant then bears the burden of demonstrating that those architectural modifications are not readily achievable.

### Statement of Facts

As the district court found following the trial in this matter, Kreisler has cerebral palsy and rheumatoid arthritis and is unable to walk, but can stand with assistance and utilizes a motorized wheelchair for mobility. (SPA 2; JA 32 (Tr. 21:1-6)). He often eats at diners in his New York City neighborhood and passes the Diner, which is about four blocks from where he lives, three to four times a week. (SPA 2; JA 31, 35 (Tr. 20:18-19, 24:7-8)). The Diner has booth and counter service for approximately 50 patrons. (SPA 4; JA 135-36 (Tr. 124:23-125:2)).

Kreisler first passed by the Diner in 2008. (SPA 2; JA 33 (Tr. 22:14-16)). Kreisler could not enter, however, because the facility was inaccessible due to an eight-inch step at its entrance. (SPA 2; JA 34 (Tr. 23:7-17)). At that time, the Diner had a small portable wooden ramp that could be put in place if an individual in a wheelchair wanted to enter. (SPA 3; JA 97-99 (Tr. 86:24-88:3)). Kreisler testified at trial, however, that the small wooden ramp, even when in place, was inadequate to permit him to enter because the weight of his wheelchair might cause it to shift

5

and dislocate, causing damage to his wheelchair. (JA 35-36 (Tr. 24:16-25:1)).

Since 2008, Kreisler has passed the Diner on many occasions and continues to want to eat there. (SPA 2; JA 35 (Tr. 24:9-12)). Indeed, Kreisler has sued other restaurants in his neighborhood for lack of compliance with the ADA, so that he can have the same opportunities to dine out as anyone else in his neighborhood; once certain that those other restaurants complied with the law, Kreisler has eaten at several of them. (SPA 2; JA 67-70 (Tr. 56:12-59:3)). He has not entered the Diner because it remains inaccessible due to the step at the entrance, as well as an undersized front vestibule that is not wide enough to accommodate his wheelchair even if he could get up the step. (SPA 2; JA 225-26 (Tr. 214:8-215:3), 270-74 (Tr. 259:21-263:15), 326 (Tr. 315:1-4)). It was not until after this lawsuit was initiated that the Diner obtained a temporary aluminum ramp without guardrails, installed a buzzer at its entrance, and posted in its front window a sign printed on a white sheet of paper, which is sometimes missing, that suggests patrons ring the bell for assistance. (SPA 3; JA 123-27 (Tr. 112:7-116:2)).

On October 4, 2010, Kreisler filed a complaint seeking injunctive relief and attorneys' fees against defendants Second Avenue Diner Corp. and J.J.N.K. Corp., its operator, owner and landlord, and alleging that the facility was inaccessible due to his disability

6

in violation of Title III of the ADA.[2] *See Kreisler v. Second Ave. Diner Corp.*, 10 Civ. 7592 (RJS), 2011 WL 4686500, at *1 (S.D.N.Y. Oct. 5, 2011). Kreisler alleged that the Diner denied him safe and full access to the facilities due to several architectural barriers, including a seven- to eight-inch step at the facility's entrance, an undersized front vestibule with doors that swing outward, and various conditions in its interior, including the seating area and the restrooms that, he alleged, violated the ADA. *See Kreisler v. Second Ave. Diner Corp.*, 10 Civ. 7592 (RJS), 2012 WL 3961304, at *1 (S.D.N.Y. Sept. 11, 2012) (SPA 1-17).

Following discovery, the district court denied the Diner's motion for summary judgment. *See Kreisler*, 2011 WL 4686500, at *1. The court held that Kreisler had standing and was entitled to seek injunctive relief as to all the Diner's inaccessible barriers that pertain to his disability, even if he had not personally

--------

[2]   The only remedies available to a private plaintiff under Title III of the ADA are injunctive relief and attorneys' fees. *See* 42 U.S.C. § 12188(a)(1) (affording private plaintiffs the remedies provided under the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(a)). Money damages may be awarded to aggrieved individuals when requested in suits brought by the Attorney General. *See* 42 U.S.C. § 12188(b)(2)(B). In this case, the district court awarded damages to Kreisler in connection with his state-law claims, which the district court considered under its supplemental jurisdiction. (SPA 15-16).

7

encountered such barriers. *Id.* Emphasizing that
Kreisler lives approximately four and half blocks
from the Diner, enjoys eating at diners, and has
passed by the Diner on many occasions, the district
court determined that Kreisler had sufficiently al-
leged that he would have gone to the Diner if it were
accessible. *Id.* at *2. Relying on Eighth and Ninth
Circuit precedent that addresses this precise issue, as
well as the holdings of district courts in this circuit,
the district court ruled that because Kreisler was
aware of the Diner's inaccessibility and avoided the
restaurant because of these discriminatory condi-
tions, he suffered injury in fact and need not have
undertaken the "futile gesture" of attempting to enter
the facility to have standing. *Id.* (quotation marks
omitted).

The district court conducted a bench trial on Octo-
ber 11 and 12, 2011, at which Kreisler, officers of the
Diner and J.J.N.K. Corp., the Diner's accountant, and
architectural experts testified. (JA 13-382). Following
the trial, the district court issued written findings of
facts and conclusions of law, reaffirmed its ruling as
to Kreisler's standing, and granted Kreisler partial
relief. (SPA 1-17). The district court ordered the Din-
er to seek to obtain a permit to install a permanent
ramp outside the Diner and, upon receipt of the per-
mit, to construct a permanent ramp within ninety
days; post clearer signage as to the availability of as-
sistance to persons using wheelchairs; install a grab
bar in the men's restroom; insulate lavatory pipes
and replace fixed soap dispensers with bottled soap;
pay $1,000 in damages based on plaintiff's state law
claims; and pay plaintiff's attorneys' fees in an

8

amount to be determined based on further submissions. (SPA 13, 16-17).

Regarding standing, the district court stated that "[n]othing presented at trial undermines [its] conclusions" that Kreisler has standing to sue with regard to the Diner's entrance and front vestibule even though Kreisler has never entered the Diner. (SPA 6). The district court credited Kreisler's testimony that "he would visit the Diner if he were able to access it but has not attempted to do so because of the high step [at its entrance] and lack of any indication that he would be able to enter." (SPA 6). With respect to the Diner's interior violations, the district court once again relied on Eighth and Ninth Circuit precedent to conclude that "once a plaintiff has established that he has standing to sue with respect to one barrier, he can sue with respect to all barriers on the premises affecting his disabilities." (SPA 6). Consequently, the district court ruled that regardless of whether Kreisler entered the Diner or personally encountered its interior violations, he had standing to sue and seek the elimination of all its inaccessible barriers that pertain to his disability.

This appeal followed.

9

**A R G U M E N T**

**POINT I**

**The District Court Correctly Concluded That
Kreisler Had Standing to Challenge Barriers
Pertaining to His Disability at the Diner**

### A.  The Statutory Framework

The ADA was enacted "to address the major areas of discrimination faced day-to-day by people with disabilities," 42 U.S.C. § 12101(b)(4), and seeks "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101(a)(7). Title III of the ADA prohibits discrimination in privately operated places of public accommodation:

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). That prohibition applies not only to "obviously exclusionary conduct—such as . . . an obstacle course leading to a [facility's] entrance, [but also] . . . proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors." *Chapman*, 631 F.3d at 945. For existing public accommodations such as the Diner,

which was designed and constructed for first occu-
pancy prior to January 26, 1992, prohibited discrimi-
nation results from, among other things, a defend-
ant's "failure to remove architectural barriers" where
such removal is "readily achievable." 42 U.S.C.
§ 12182(b)(2)(A)(iv).[3]

The ADA provides a private right of action and
remedy to "any person who is being subjected to dis-
crimination on the basis of disability" in violation of
Title III. 42 U.S.C. § 12188(a)(1). It also specifies that
"[n]othing in this section [regarding enforcement of

_____

[3]   This standard differs from the standard for
newly constructed facilities, which must be readily
accessible to and usable by individuals with disabili-
ties. *See* 28 C.F.R. § 36.401. Depending on the date of
the construction, such facilities must comply with the
1991 ADA Standards for Accessible Design, 28 C.F.R.
Part 36, Appendix D (the "1991 Standards"), or the
2010 ADA Standards for Accessible Design, which
consist of the requirements contained in 28 C.F.R.
Part 36, subpart D, and appendices B and D to 36
C.F.R. Part 1191 (the "2010 Standards"). The 1991
Standards and 2010 Standards are available at
ww.ada.gov.

Moreover, when a facility undergoes alterations
that affect usability, the alterations must comply
with the applicable ADA Standard to the maximum
extent feasible. *See* 28 C.F.R. § 36.402. The record
does not indicate that the Diner engaged in any al-
terations affecting usability.

11

Title III] shall require a person with a disability to engage in a *futile gesture* if such person has actual notice that a person or organization covered by [Title III] does not intend to comply with its provisions." *Id.* (emphasis added). Congress included this language to provide a plaintiff with the same protection afforded by the "futile gesture" doctrine enunciated in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 366 (1977). *See* S. Rep. No. 101-116, at 40 (1989) (applying "futile gesture" analysis of *Teamsters* to Title I of the ADA); H.R. Conf. Rep. 101-596, at 80 (1990) (extending "futile gesture" provision from Senate Report's discussion of Title I to Title III of the ADA); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) (noting incorporation of *Teamsters* "futile gesture" doctrine into Title I, then Title III, of the ADA). In *Teamsters*, the Supreme Court held that some minority plaintiffs who did not apply for promotions were "as much . . . victim[s] of discrimination" and entitled to relief as those who did. 431 U.S. at 365-66. The Court explained that so long as nonapplicants were aware of an employer's unlawful discriminatory practices and were "deter[red]" from applying for positions solely because of their unwillingness to engage in the "futile gesture" of "subject[ing] themselves to the humiliation of explicit and certain rejection," they were entitled to relief. *Id.* Consistent with *Teamsters*, 42 U.S.C. § 12188(a)(1) guarantees that an individual, who has knowledge of and is thereby deterred by barriers to access, need not personally subject himself to the "futile gesture" and "humiliation" of confronting those conditions to obtain relief. *See Desiderio v. Na-*

12

*tional Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202
(2d Cir. 1999); *Williams v. Lambert*, 46 F.3d 1275,
1280 (1995).

### B. The District Court Correctly Held a Plaintiff Need Not Have Personally Experienced Barriers to Have Suffered Injury in Fact and Have Standing to Seek Injunctive Relief Under Title III of the ADA

To establish standing to seek injunctive relief, "a
plaintiff must show that he is under threat of suffer-
ing 'injury in fact' that is concrete and particularized;
the threat must be actual and imminent, not conjec-
tural or hypothetical; it must be fairly traceable to
the challenged action of the defendant; and it must be
likely that a favorable judicial decision will prevent
or redress the injury." *Summers v. Earth Island Inst.*,
555 U.S. 488, 493 (2009); *accord Clapper v. Amnesty
International USA*, 133 S. Ct. 1138, 1147 (2013);
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61
(1992).

In this case, the Diner argues only that, because
Kreisler never entered or attempted to enter the Din-
er, he has not suffered an injury in fact and therefore
lacks standing to seek injunctive relief to remedy any
of the barriers that exist at the Diner. (Diner Br. 7.)
The Diner's argument is unsupported. To demon-
strate actual injury for purposes of standing, a plain-
tiff must establish harm that is "concrete and par-
ticularized" and "actual or imminent," and is not
"conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560
& n.1; *accord Hargrave v. Vermont*, 340 F.3d 27, 34

13

(2d Cir. 2003) (discussing "conjectural or hypothetical" test). Such injury "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Lujan*, 504 U.S. at 578 (citations and quotation marks omitted); *accord Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449 (1989). A plaintiff must allege either that a defendant's conduct currently causes him harm, or poses a "likelihood of substantial and immediate irreparable injury" if relief is not granted. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (quotation marks omitted); *accord Clapper*, 133 S. Ct. at 1150 n.5 ("'substantial risk' that the harm will occur"); *NRDC v. FDA*, 710 F.3d 71, 81 (2d Cir. 2013) ("credible threat of harm," after *Clapper*). Consequently, when a defendant's discriminatory conduct causes a plaintiff either a current, continuing harm, or a threat of imminent harm, the plaintiff suffers injury in fact and has standing to seek injunctive relief. *See, e.g.*, *McCormick ex rel. McCormick v. School Dist. of Mamaroneck*, 370 F.3d 275, 284-85 (2d Cir. 2004) (female students who wanted to play soccer and faced imminent threat that they would be unable to compete for championships due to school district's decision to offer fall soccer only to boys suffered injury and had standing to pursue Title IX discrimination claim).

Consistent with these principles, this Court has held that it is sufficient for a plaintiff seeking to sue under Title III of the ADA to (1) "allege[ ] past injury under the ADA"; (2) show that "it is reasonable to infer from [the] complaint that this discriminatory treatment will continue"; and (3) show that "it is also

14

reasonable to infer, based on the frequency of [plaintiff's] visits and the proximity of [the public accommodation] to [plaintiff's] home, that [plaintiff] intends to return to [the public accommodation] in the future." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008) (blind patron of fast food restaurants in her area had standing to assert that restaurants violated the ADA by failing to provide effective communication options to allow her to read the menu (citing *Pickern*, 293 F.3d at 1137-38)). These standards must be applied liberally: as this Court has noted, "[t]he ADA and Rehabilitation Act generously confer the right to be free from disability-based discrimination by public entities and federally funded programs and, in so doing, confer standing for persons claiming such discrimination to enforce that right." *Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009).

The district court in this case properly relied upon this precedent to conclude that plaintiff had standing. *See Kreisler*, 2011 WL 4686500, at *1-2. The district court concluded in its summary judgment ruling that Kreisler had, first, desired to visit the Diner but was unable to enter "because the high front step, as well as the lack of signage or a buzzer, deterred him," *id.* at *2; second, the failure of the Diner to become accessible supported the inference that the discriminatory treatment would continue, *id.*; and third, that Kreisler had passed the Diner "on many occasions and would have gone in to eat at the [D]iner if it was accessible," *id.* Following the bench trial, the district court found that "[n]othing presented at trial undermines [these] conclusions." (SPA 6). The Diner fails to contest any of these facts on appeal. Instead it argues

15

that to establish standing, an ADA plaintiff must personally experience those barriers that relate to his disability. That contention is contrary to the plain language of the statute, the precedent of this Court, and the decisions of other circuits.

A plaintiff such as Kreisler need not enter, attempt to enter, or personally encounter a barrier to access to a place of accommodation to establish that his right to "full and equal enjoyment" of the facility was impaired on the basis of his disability, and therefore he has standing to sue under Title III of the ADA. 42 U.S.C. § 12182(a), (b)(2)(A)(iv). Rather, "'[o]nce a disabled individual has encountered *or become aware of alleged ADA violations that deter his patronage of* or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact . . . and so he possesses standing under Article III.'" *Chapman*, 631 F.3d at 947 (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2008)) (emphasis added). Consequently, "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues" and he has standing. *Pickern*, 293 F.3d at 1137-38; *see Disabled Americans for Equal Access, Inc. v. Ferries del Caribe, Inc.*, 405 F.3d 60, 65 n.7 (1st Cir. 2005) (plaintiff need not have traveled on defendant's vessel to challenge its inaccessibility); *Steger v. Franco*, 228 F.3d 889, 894 (8th Cir. 2000) (plaintiff not required to encounter facility's barriers so long as he knows of them and would visit but for them, in order to have standing); *see also Frame v. City of Arlington*, 657 F.3d 215, 235 (5th Cir. 2011) (en banc) (city resi-

16

dents need not "personally encounter[ ]" inaccessible
sidewalks to suffer injury and have standing to seek
injunctive relief under Title II of the ADA).[4]

In light of this precedent, the Diner's argument
falls far short. (Diner Br. Points I & II.) The Diner
claims to rely upon *Steger* (Diner Br. 10-11) but ig-
nores the direct holding of the case, which is that the
plaintiff "need not encounter all of these barriers to
obtain effective relief." *Steger*, 228 F.3d at 894. The
Diner likewise neglects to address this Court's analy-
sis of standing in the context of the ADA, as set forth

_____

4    Indeed, the Diner's central argument illus-
trates the wisdom and necessity of this rule. The
Diner maintains that "the plaintiff chould [sic] have
asked for assistance and been denied, and he chould
[sic] have attempted some effort at patronage and
been denied to show a legitimate injury in fact." (Din-
er Br. 9.) But one of the purposes of the ADA is "to
assure . . . independent living" by people with disabil-
ities, 42 U.S.C. § 12101(a)(7); leaving Kreisler de-
pendent upon the Diner's staff hardly furthers that
goal, particularly where there was no evidence before
the district court that that staff has been properly
trained to offer assistance, or that such assistance is
available at all times that the Diner is open. And be-
cause the Diner's vestibule was indisputably non-
compliant, had Kreisler been brought up the ramp he
may well have been forced to turn around and leave
without entering the Diner in any event. The law
does not require such a time-wasting indignity for a
plaintiff to have standing. *See infra* Point I.C.

17

in *Camarillo*. Consistent with that precedent, the United States respectfully suggests that the Court adopt the same conclusion reached in *Chapman* and *Steger*: that an ADA Title III plaintiff has standing to challenge all barriers that pertain to his or her disability at a place of public accommodation that plaintiff intends to visit, whether or not that plaintiff has personally experienced those barriers.[5]

————————

[5]   The Diner's argument that this test "would confer standing to plaintiffs who with binoculars could stand across a street and see steps in front of storefronts," or who find barriers "with a telescope," or "on the internet," misstates the test, trivializes the harms of the discrimination it is engaging in, and ignores the evidence at trial. (Diner Br. 9). As the district court correctly concluded in its opinion denying the Diner summary judgment, Kreisler did not merely peer at the Diner through binoculars, but proved past injury, continuing violations, and an intent to visit or return to the facility. *See Kreisler*, 2011 WL 4686500, at *1-2; *Camarillo*, 518 F.3d at 158 (plaintiff intended to return to fast-food locations); *see also Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074-75 (7th Cir. 2013) (ruling that while plaintiff had standing to challenge inaccessible spring-hinged door closers at Marriott Hotel where she stayed and expected to stay in the future, plaintiff lacked standing to challenge same door closers at fifty-six other Marriott Hotels she had shown no intent of visiting).

18

## C. A Plaintiff Need Not Engage in "Futile Gestures" to Have Standing to Seek Injunctive Relief

In addition, 42 U.S.C. § 12188(a)(1) expressly negates any requirement that a plaintiff enter or attempt to enter a public accommodation or personally encounter an inaccessible barrier to suffer "injury in fact" and have standing to seek injunctive relief. That provision, which authorizes private lawsuits to eliminate discriminatory conditions, specifies that a plaintiff with "actual notice" of defendant's discrimination need not "engage in a futile gesture" to pursue a claim for relief. *Id.*

Interpreting this provision, courts of appeals have consistently concluded that so long as a plaintiff "has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, [he] need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury" for purposes of standing. *Pickern*, 293 F.3d at 1135; *see Frame*, 657 F.3d at 236 ("a disabled individual need not engage in futile gestures before seeking an injunction" under Title II of the ADA as to inaccessible sidewalks he has not personally encountered; "the individual must show only that an inaccessible sidewalk actually affects his activities in some concrete way"); *Chapman*, 631 F.3d at 947 (plaintiff has standing once he "'has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation'" (quoting *Doran*, 524 F.3d at 1042 n.5)); *Disabled Americans for Equal Access*, 405 F.3d

19

at 65 n.7 (plaintiff not required to "engage" in the 'futile'—indeed, allegedly hazardous—'gesture' of actually traveling aboard [defendant's] cruise vessel" to establish standing); *Steger*, 228 F.3d at 892 ("plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers"). Accordingly, as 42 U.S.C. § 12188(a)(1) makes clear and the district court correctly held, the Diner's standing argument is wrong, and no plaintiff needs to seek or gain access to a public accommodation, or attempt to negotiate an inaccessible barrier, to have standing to seek injunctive relief.

## D. The District Court Correctly Held That a Plaintiff with Standing Can Challenge Any Inaccessible Barrier Within a Facility That Pertains to His or Her Disability

Once an ADA plaintiff has standing, he is entitled to seek injunctive relief with regard to all a facility's discriminatory conditions that pertain to his or her disability. *Chapman*, 631 F.3d at 950-53; *Steger*, 228 F.3d at 893-94 (plaintiff "need not encounter all [of defendant's] barriers to obtain effective relief"). The Court should reject the constricted view of standing that the Diner now advances, and join the other courts of appeals that have agreed that a plaintiff has standing to challenge any inaccessible barrier within the facility that pertains to his or her disability.

That conclusion is consistent with the ADA's remedial scheme, which emphasizes that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by in-

20

dividuals with disabilities." 42 U.S.C. § 12188(a)(2);
*see Chapman*, 631 F.3d at 951; *Steger*, 228 F.3d at
894. In addition, the injury at stake in a Title III law-
suit is the deprivation of the full and equal enjoyment
of an accommodation due to plaintiff's disability;
thus an enforcement action must provide a remedy
that rectifies the entire harm to the plaintiff, a reme-
dy that necessarily includes the elimination of all the
accessibility barriers within a facility that pertain to
plaintiff's disability. "'[A] rule limiting a plaintiff to
challenging the barriers he or she had encountered
. . . would burden businesses and other places of pub-
lic accommodation with more ADA litigation, encour-
age piecemeal compliance with the ADA, and ulti-
mately thwart the ADA's remedial goals of eliminat-
ing widespread discrimination against the disabled
and integrating the disabled into the mainstream of
American life.'" *Chapman*, 631 F.3d at 952 (quoting
*Doran*, 524 F.3d at 1047). Consequently, an ADA
plaintiff with standing is entitled to seek injunctive
relief as to all of an accommodation's accessibility
barriers that pertain to the plaintiff's disability.

To argue, as the Diner does here, that Kreisler
lacks standing, and is barred from seeking injunctive
relief, because he has not entered or attempted to en-
ter the Diner or personally encountered any barriers
inside the facility, is not only contrary to the ADA's
language and established precedent, but wholly illog-
ical. It is undisputed that among the Diner's alleged
ADA violations are several obstacles, including a high
step at the facility's entrance and an undersized front
vestibule, that physically block and deter Kreisler
from entering the facility. Indeed, the district court

21

credited Kreisler's testimony that he would have vis-
ited the Diner "if he were able to access it." (SPA 6).
Thus, Kreisler's inability to enter the Diner, or per-
sonally encounter its interior conditions, is entirely
due to the Diner's failure to take steps to allow him to
enter. The rule the Diner proposes would create a
perverse incentive for places of public accommodation
to maintain barriers to access by, and therefore con-
tinue to exclude, persons with disabilities, and then
argue that they are protected from an ADA lawsuit
because those persons lack standing. The Diner's po-
sition also leads to the absurd result that a plaintiff
like Kreisler would have to file multiple lawsuits, one
after the other, to be able to enjoy the goods and ser-
vices offered by the Diner: first filing suit over the en-
trance, then a second suit addressing the vestibule
area, then a third suit addressing the dining area,
then a fourth suit addressing the restroom facilities.[6]
Finally, it is both perverse and dangerous to require a
plaintiff to engage in the demeaning and often impos-
sible task of attempting to negotiate barriers to ac-
cess as a prerequisite to bringing a lawsuit or obtain-
ing relief. For instance, as Kreisler testified, the
small portable wooden ramp that the Diner occasion-
ally used before Kreisler brought suit could shift and

_____

[6]   And under the Diner's logic, at least one male
plaintiff and at least one female plaintiff would have
to file suit, to address barriers to accessibility in both
the men's and women's restrooms. The Diner's expert
conceded at trial that neither bathroom was accessi-
ble. (JA 329 (Tr. 318:8-11)).

22

dislocate under the weight of his wheelchair, both causing harm and precluding entry. (JA 35-36 (Tr. 24:16-25:1)). The ADA expressly disclaims any need to engage in such "futile gesture[s]." 42 U.S.C. § 12188(a)(1).

For all those reasons, the district court was correct in ruling that Kreisler had standing to seek injunctive relief as to all the Diner's barriers to access that pertain to Kreisler's disability.

## POINT II

### The District Court Correctly Held That the Diner Bore the Burden of Demonstrating That Compliance Was Not Readily Achievable

The Diner also contends that a plaintiff should bear an extensive burden of proof to demonstrate that the architectural modifications necessary to increase accessibility were readily achievable, citing *Colorado Cross Disability Coalition v. Hermanson Family Ltd.*, 264 F.3d 999 (10th Cir. 2001). (Diner Br. 12-15). This Court, however, has expressly rejected *Colorado Cross Disability Coalition* on this very point. In *Roberts v. Royal Atlantic Corp.*, this Court held that

> we require a plaintiff to articulate a plausible proposal for barrier removal, "the costs of which, facially, do not clearly exceed its benefits." Neither the estimates nor the proposal are required to be exact or detailed, for the defendant may counter the plaintiff's showing by meeting its own burden of persuasion

23

> and establishing that the costs of a
> plaintiff's proposal would in fact exceed
> the benefits.

542 F.3d 363, 373 (2d Cir. 2008) (quoting *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). In so holding, this Court noted that "[t]his view of the plaintiff's initial burden departs somewhat from that expressed by the Tenth Circuit in *Colorado Cross Disability Coalition*," under which a plaintiff's proposed barrier removal must include specific details and precise cost estimates. *Roberts*, 542 F.3d at 373 n.6; *see also Molski v. Foley Estates Vineyard & Winery LLC*, 531 F.3d 1043, 1048 (9th Cir. 2008) (rejecting *Colorado Cross Disability Coalition*). As this Court explained, the Tenth Circuit's test "asks too much of the typical plaintiff, particularly where defendants can so quickly dispose of non-meritorious claims by reference to their knowledge and information regarding their own facilities." *Roberts*, 542 F.3d at 373 n.6. Because the district court's holding on this point faithfully applied *Roberts* (*see* SPA 7), the Court should reject the Diner's contention that this Court should follow a ruling that it has already repudiated.

The Diner further insists that this Court should hold that the "readily achievable" standard should be subject to an additional requirement, in that any remedy requiring a variance from local building codes "should presumptively be deemed not readily achievable." (Diner Br. 15). Apart from conflicting with this Court's conclusion in *Roberts* that the burden of demonstrating that barrier removal is not readily

24

achievable rests with the defendant, the Diner's argument flatly contradicts the plain language of the ADA. The "readily achievable" provision of the ADA expressly places the burden of proof upon the place of public accommodation: "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable," the entity is required to make its goods and services available through alternative methods. *See* 42 U.S.C. § 12182(b)(2)(A)(v).[7] The regulation implementing this section also directly lays the burden upon the place of public accommodation. *See* 28 C.F.R. § 36.305(a).

In addition, the ADA also applies to the City of New York through Title II, *see* 42 U.S.C. §§ 12131-12165, and the relationship of Title II and Title III of the ADA in this context further underscores why the Diner's proposed presumption should be rejected. Because Title II of the ADA requires the City to modify its services, programs, or activities where necessary to avoid discrimination on the basis of disability, *see* 28 C.F.R. § 35.130(b)(7), the City may be obliged to approve installation of a ramp. The Department of Justice's Technical Assistance Manual for Title II explains that a municipality may be required to grant a zoning variance to permit installation of a ramp at a place of public accommodation. *See* Title II of the Americans with Disabilities Act: Technical Assistance

---

7   Clause (iv) is 42 U.S.C. § 12182(b)(2)(A)(iv), which defines discrimination to include "a failure to remove architectural barriers," i.e., the discrimination at issue here.

25

Manual § II-3.6100, illus. 1 (1993) ("A municipal zon-
ing ordinance requires a set-back of 12 feet from the
curb in the central business district. In order to in-
stall a ramp to the front entrance of a pharmacy, the
owner must encroach on the set-back by three feet.
Granting a variance in the zoning requirement may
be a reasonable modification of town policy."); *Innova-
tive Health Sys., Inc. v. City of White Plains*, 117 F.3d
37, 44-46 (2d Cir. 1997) (citing Manual), *superseded
by rule change on other grounds as noted in Zervos v.
Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir.
2001)). The district court's order on this point should
therefore be affirmed.

26

**CONCLUSION**

**The orders of the district court should be affirmed.**

Dated:    New York, New York
          April 25, 2013

                    Respectfully submitted,

                    PREET BHARARA,
                    *United States Attorney for the*
                    *Southern District of New York,*
                    *Attorney for the United States.*

                    DAVID J. KENNEDY,
                    BENJAMIN H. TORRANCE,
                    *Assistant United States Attorneys,*
                        *Of Counsel.*

THOMAS E. PEREZ,
*Assistant Attorney General*
MARK L. GROSS,
LISA J. STARK,
*Attorneys, Appellate Section*
*Civil Rights Division*
*Department of Justice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B). As measured by the word processing system used to prepare this brief, there are 5,907 words in this brief.

PREET BHARARA,
*United States Attorney for the Southern District of New York*

By: DAVID J. KENNEDY,
*Assistant United States Attorney*